UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **DARREN WALTON**, on behalf of those similarly situated | **2:20-CV-12298-TGB-RSW** |
| Plaintiff, | |
| vs. | **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS (ECF NO. 9)** |
| **GRAMMER INDUSTRIES INC**, | |
| Defendant. | |

This case arises out of an allegedly defective part incorporated into car seat headrests used in Chrysler vehicles. The headrests are made with a safety feature that causes them to spring forward to protect the occupant's head and neck in the event of a sudden rear-end impact. A component within the headrest is allegedly made of "cheap" plastic, wears out easily, and when it fails the headrest can spring forward unexpectedly and potentially injure the driver or passenger. The complaint by Plaintiff generally alleges that Defendant Grammer Industries manufactured and sold these headrests for integration into certain vehicles manufactured by nonparty Chrysler. Plaintiff alleges four causes of action: (1) violation of Pennsylvania's Unfair Trade Practices and Consumer

1

Protection Law ("UTPCPL"); (2) violation of the Magnuson-Moss Warranty Act ("MMWA"); (3) breach of the implied warranty of merchantability; and (4) unjust enrichment. Currently before the Court is Defendant Grammer's Motion to Dismiss (ECF No. 9).

## I.    BACKGROUND

Since 2010, Defendant Grammer Industries, LLC[1] ("Grammer" or "Defendant") has manufactured headrests that are then incorporated into certain model Chrysler vehicles. Complaint, ECF No. 1, PageID.1. These headrests contain a safety mechanism known as an "active head restraint" ("AHR") that is designed to spring forward in the event of a rear-end collision, cushioning the occupant's head in order to prevent whiplash injuries. *Id.* at PageID.13. But according to Plaintiff, Grammer's AHR systems contain a dangerous flaw that can cause them to activate inadvertently, risking direct bodily harm and a crash if the AHR strikes a vehicle's operator while the vehicle is being driven. *Id.* at PageID.1-2. Plaintiff alleges that a critical component—the bracket that restrains the AHR system unless and until a crash is detected—is made of "cheap plastic" that is not strong enough to restrain the AHR. *Id.* Plaintiff alleges that this "inferior and

---

[1] Grammer notes in its Motion to Dismiss that it converted to an LLC effective September 30, 2020. ECF No. 9, PageID.72. The Clerk is directed to correct the case caption accordingly.

2

inexpensive" plastic wears down over time under normal operating conditions, leading to unexpected and unintended AHR activations. *Id*. at PageID.2.

Plaintiff Darren Walton is a Pennsylvania citizen. *Id*. at PageID.6. In 2016, Walton purchased a certified pre-owned model year 2014 Jeep Cherokee equipped with the allegedly defective Grammer AHR from a Pennsylvania Chrysler dealer. *Id*. at PageID.6-7. In June 2020, the passenger-side AHR in Walton's Jeep Cherokee spontaneously deployed, striking Walton's daughter in the back of the head. *Id*. at PageID.7. Walton brought his Jeep to the dealership from which he had purchased it. *Id*. at PageID.7-8. There, a Chrysler representative inspected the AHR and informed Walton that it could not be returned to its original position or repaired because a plastic component had broken. *Id*. at PageID.8. The dealership then told Walton that, because his vehicle was out of warranty, it would cost approximately $800 to fix the headrest. *Id*. At no time, Plaintiff alleges, did the Chrysler representative or the dealer reveal or acknowledge that the broken plastic part was defective. *Id*.

Plaintiff alleges that, since 2010, Grammer has been aware of this defect, but intentionally concealed it from Plaintiff and other vehicle owners. *Id*. at PageID.19-20. Plaintiff claims that, by

3

concealing this defect, Grammer denied him and other vehicle owners the benefit of their bargains, because they paid more for their vehicles than they otherwise would have had the defect been disclosed. *Id.* at PageID.5. Plaintiff further claims that the defect cost him and other vehicle owners the time and money associated with bringing their vehicles in for diagnosis and repair, as well as the actual costs associated with diagnosing and repairing or replacing the defective AHR systems. *Id.* Plaintiff also alleges that because Grammer has not addressed the defective design, when an AHR unit fails, it is merely replaced with *another* defective AHR, presenting a continuing safety risk to the vehicle owner. *Id.* at PageID.30. Moreover, plaintiff alleges, vehicle owners who pay out of pocket for an AHR replacement are denied the benefit of their bargain a second time, as they have now been forced to pay for a second defective component. *Id.*

Plaintiff proposes a nationwide class of persons who currently own or lease a Chrysler vehicle equipped with a Grammer AHR system, or who previously owned or leased such a vehicle. ECF No. 1, PageID.37. On behalf of the nationwide class, Plaintiff asserts claims under the federal Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, and claims for unjust enrichment. Plaintiff also seeks to certify a subclass of persons in Pennsylvania who currently own or

4

lease, or in the past owned or leased, a Chrysler vehicle with a Grammer AHR. ECF No. 1, PageID.37. On behalf of the Pennsylvania subclass, Plaintiff alleges violations of Pennsylvania's Unfair Trade Practices and Consumer Protection Law (UTPCPL), 73 Pa. Stat. § 201-1, and a breach of the implied warranty of merchantability under Pennsylvania law, 13 Pa. Stat. and Cons. Stat. § 2314. Pending before the court is Grammer's motion to dismiss all counts. Def's Mot. to Dismiss, ECF No. 9.

## II.   STANDARD OF REVIEW

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes the court to dismiss a lawsuit if it "fails to state a claim upon which relief can be granted." Rule 8(a) requires only that pleadings contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Though this standard is liberal, courts have held that it requires plaintiffs to provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action" in support of their grounds for entitlement to relief. *Albrecht v. Treon*, 617 F.3d 890, 893 (6th Cir. 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007)).

In evaluating a motion to dismiss under Rule 12(b)(6), courts must construe the complaint in the light most favorable to the

plaintiff and accept all well-pled factual allegations as true. *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (citing *Kottmyer v. Maas*, 436 F.3d 684, 688 (6th Cir. 2006)). Consideration of a motion to dismiss under Rule 12(b)(6) is generally confined to the pleadings. *Jones v. City of Cincinnati*, 521 F.3d 555, 562 (6th Cir. 2008). Courts may, however, consider any exhibits attached to the complaint or the defendant's motion to dismiss "so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (citing *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001)).

## III.  ANALYSIS

Plaintiff asserts claims under the laws of Pennsylvania, and also seeks to assert claims on behalf of a nationwide class of vehicle purchasers. Defendant argues that Plaintiff lacks Article III standing to assert claims based on the laws of other states. Defendant also argues that Plaintiff's claim for breach of an implied warranty and claim under the Magnuson-Moss Warranty Act are time-barred, and that plaintiffs have failed to allege that Grammer had knowledge of the defect—precluding Plaintiff's claim under the Pennsylvania Unfair Trade Practices and Consumer Protection

6

Law. Finally, Defendant argues that Plaintiff has failed to allege a claim for unjust enrichment.

The Court concludes that the Article III standing inquiry is logically subsumed within the class certification question. The Court further concludes that, because Plaintiff has failed to adequately allege that Grammer had knowledge of the defect, Plaintiff has not stated a claim under Pennsylvania's Unfair Trade Practices and Consumer Protection Law. For the same reason, Plaintiff has not sufficiently alleged that the fraudulent concealment doctrine should toll the statute of limitations as to Plaintiff's claims for breach of an implied warranty and violation of the Magnuson-Moss Warranty Act. The Court further concludes that Plaintiff has alleged a plausible unjust enrichment claim.

For the foregoing reasons the court will **GRANT** Defendant Grammer's Motion to Dismiss Count One, Count Two, and Count Three. The Court will **DENY** Defendant's Motion to Dismiss Count Four.

### a. Standing as to nationwide claims

Article III "[s]tanding requires Plaintiffs to show 1) that they have suffered an injury-in-fact that was 2) caused by Defendants' conduct and that 3) this Court can likely redress the injury with a decision for Plaintiffs." *Chapman v. Gen. Motors LLC*, No.

7

219CV12333TGBDRG, 2021 WL 1286612, at *4 (E.D. Mich. Mar. 31, 2021) (quoting *Kanuszewski v. Michigan Dep't of Health & Human Servs.*, 927 F.3d 396, 405 (6th Cir. 2019)). Grammer argues that Plaintiff Walton lacks standing to assert claims predicated on the laws of states where Plaintiff does not live, and where Plaintiff suffered no injury. Therefore, Grammer says, Plaintiff's putative nationwide class claims must be dismissed. ECF No. 9, PageID.96-7. Plaintiff responds that the question of standing should be delayed to the class certification stage. ECF No. 13, PageID.305.

In *Chapman v. General Motors*, 2021 WL 1286612 at *4, this Court addressed a similar argument. As this Court explained, the Supreme Court has held that "when class certification issues are 'logically antecedent' to Article III concerns, and 'themselves pertain to statutory standing,' the Article III standing inquiry can essentially be combined with the class certification inquiry." *Chapman*, 2021 WL 1286612 at *4 (citing *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 831, 119 S.Ct. 2295, 144 L.Ed.2d 715 (1999); *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997)). This Court further explained that courts in this district considering automotive defect claims have reached different conclusions on whether the class certification question is "logically antecedent" to the Article III standing question, and that the

"central tension" between the two competing interpretations "is their conceptualization of injury." *Chapman*, 2021 WL 1286612 at *5.

On the one hand, cases in the *Fallick-Bledsoe-Hoving* line conceive of injury as "the general harm accruing from the conduct of the defendant according to the allegations in a complaint." *Chapman*, 2021 WL 1286612 at *5 (citing *Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410, 422 (6th Cir. 1998); *Hoving v. Transnation Title Ins. Co.*, 545 F. Supp. 2d 662, 667-68 (E.D. Mich. 2008); *Bledsoe v. FCA US LLC*, 378 F. Supp. 3d 626, 641-42 (E.D. Mich. 2019)). On the other hand, cases following *Smith v. Lawyers Title Ins. Corp* No. 07-12124, 2009 WL 514210, at *3 (E.D. Mich. Mar. 2, 2009), consider injury "to exist only where a named plaintiff can meet the requirements of every cause of action named in a complaint." *Chapman*, 2021 WL 1286612 at *5. In *Chapman*, this Court concluded that the logic of *Fallick* "indicates that the Sixth Circuit has deliberately decided to embrace a 'general harm accruing from conduct' conceptualization of injury." *Chapman*, 2021 WL 1286612 at *6.

This case is akin to *Chapman*, in which this Court determined that the class certification question was logically antecedent to the Article III standing question. The fuel pump in *Chapman* and the

9

harm it allegedly caused was "common to all class members, no matter exactly which truck they bought or what the terms of their state consumer protection laws [were]," and the "general wrongdoing [the manufacturer was] accused of applie[d] to the Named Plaintiffs and the absent putative class members alike…." *Chapman*, 2021 WL 1286612 at *6. Therefore, this Court concluded, the class certification question was logically antecedent to the Article III standing question. *Id.* Here, the Complaint centers on the AHR system and its alleged defect, a harm that is common to all putative class members. Similarly, the general wrongdoing Grammer is accused of applies to Plaintiff and the absent putative class members alike.

Grammer concedes that this Court has discretion to consider class certification before an Article III standing inquiry, but urges the Court to follow *Smith* and its progeny, pointing to a number of decisions in which courts in this district and elsewhere held that standing inquiries were antecedent to a class certification decision. ECF No. 16, PageID.344-45. This Court has already considered and rejected such an argument on very similar facts, as discussed in this section. Just as in *Chapman*, this Court finds it appropriate here to follow the *Fallick-Bledsoe-Hoving* line of cases. The Court declines

to dismiss nationwide or state-specific claims simply because there is no named plaintiff representing that state.

### b. Plaintiff may have standing to bring claims under the UTPCPL

Defendant argues that Plaintiff lacks standing to bring a claim under Pennsylvania's Unfair Trade Practices and Consumer Protection Law ("UTPCPL"). Defendant Grammer argues that, although privity is not required under that statute, Plaintiff did not purchase anything from Grammer directly or indirectly and thus the relationship between Plaintiff and Grammer is too remote to fall within the statute. ECF No. 9, PageID.98-99. Plaintiff, for his part, contends that to qualify as a "purchaser" under the UTPCPL Plaintiff must only allege that his reliance on Grammer's allegedly deceptive behavior was "specifically intended" or "specifically foreseeable." ECF No. 13, PageID.307.

The purpose of the UTPCPL is to "place on more equal terms seller and consumer," address "unequal bargaining power," and "ensure the fairness of market transactions." *Commonwealth of Pennsylvania, by Creamer v. Monumental Properties, Inc*., 459 Pa. 450, 458, 329 A.2d 812, 816 (1974). "Pennsylvania courts have ruled that the [UTPCPL] should be interpreted very broadly so as to effectuate as fully as possible the legislature's purpose of preventing unfair or deceptive practices." *Slemmer v. McGlaughlin*

11

*Spray Foam Insulation, Inc.*, 955 F. Supp. 2d 452, 462 (E.D. Pa. 2013) (internal marks and citation omitted). Therefore, strict privity between seller and purchaser is not required. *Valley Forge Towers S. Condo. v. Ron-Ike Foam Insulators, Inc.*, 393 Pa. Super. 339, 349, 574 A.2d 641, 646 (1990), *aff'd*, 529 Pa. 512, 605 A.2d 798 (1992). Instead, claims may be raised by "those in privity, those specifically intended to rely upon the fraudulent conduct, and those whose reasonable reliance was specially foreseeable." *Valley Forge Towers*, 393 Pa. Super. at 350-51. But as the Third Circuit has noted, relief under the UTPCPL is not intended to extend to a prospective plaintiff "lacking any commercial dealings with the defendant." *Katz v. Aetna Cas. & Sur. Co.*, 972 F.2d 53, 57 (3d Cir. 1992).

Courts applying Pennsylvania law appear to have reached different conclusions in cases similar to this one. In *Adams v. Hellings Builders, Inc.*, 2016 PA Super 192, 146 A.3d 795, 801 (2016), the Superior Court of Pennsylvania concluded that reliance by plaintiffs—who purchased a home with defective stucco cladding from the original homeowner—on allegedly fraudulent conduct by a defendant homebuilder was specially foreseeable. In that case, plaintiffs alleged that defendant "generally represented in printed materials and on [defendant's] own website[] that it was a reputable

builder touting superior quality and construction," that the contract between the original homeowner and defendant homebuilder specified that the house would include cladding meeting residential codes, and that plaintiffs had relied on both of these misrepresentations. *Id.*; *Woodward v. Dietrich*, 378 Pa. Super. 111, 131-32, 548 A.2d 301 (Pa. Super.1988) (reliance by subsequent purchasers of a home on fraudulent concealment by installer of defective sewer system was specially foreseeable because "estates in land are transferred freely and regularly" and the installer "would have had special reason to foresee that any subsequent purchaser would be unaware of the material latent defect [the installer] allegedly concealed."); *Slemmer*, 955 F. Supp. 2d at 462 ("plaintiffs' alleged use of [defendant's product] for its intended purpose was 'specially foreseeable,' as plaintiffs were consumers of the product manufactured and marketed by [defendant.]") *Cf. Diehl v. The Cutler Grp., Inc.*, No. 2302 EDA 2015, 2016 WL 5349116, at *5 (Pa. Super. Ct. July 18, 2016) (reliance by plaintiffs who purchased home with defective stucco cladding from original owner on allegedly fraudulent conduct by defendant homebuilder was not "specially foreseeable" because plaintiffs were "ordinary subsequent purchasers to whom [the homebuilder] made no representations" and plaintiffs were "strangers to the contract between [defendant homebuilder] and the original purchasers.");

13

*Latuska v. Sethuraman*, No. CV 3:15-208, 2016 WL 4082738, at *5 (W.D. Pa. July 29, 2016) (subsequent purchasers of a home failed to allege claim against defendant home inspector that supervised construction and failed to discover defects because plaintiffs "failed to allege that they had any commercial dealings with the defendant.") (internal marks and citation omitted). But critically, in all the indirect purchaser cases where courts have found the UTPCPL applicable, the plaintiffs alleged some manner of representation by the defendant—either to plaintiffs directly, to the general public, to the intermediary purchaser, or some combination of these.

Here, Plaintiff alleges that he purchased a vehicle that incorporated an allegedly defective headrest supplied by Grammer, and that Grammer knew that Chrysler would supply the vehicles to consumers. ECF No. 13, PageID.308-9. Thus, Plaintiff argues, his reliance on Grammer's nondisclosure of the defect was specially foreseeable. But the only allegation of representations are those made by Chrysler and directed at Plaintiff. Without any allegations of representations by Grammer—either to Plaintiff, to Chrysler, or to the general public—the Court is not convinced that Plaintiff has alleged enough to implicate the UTPCPL's protection. But the Court need not reach the standing issue because, as is explained

below, Plaintiff has not sufficiently alleged a claim against Grammer under the UTPCPL.

### c. Plaintiff has not sufficiently alleged that Grammer knew of the alleged AHR defect

Plaintiff's putative claim falls under the UTPCPL's "catch-all" provision, which prohibits "[u]nfair methods of competition" and "unfair or deceptive acts or practices," including "any . . . fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding." ECF No. 1, PageID.43 (internal quotation marks omitted) (quoting 73 Pa. Stat. Ann. §§ 201-2, 201-3, 201-9.2). Courts interpreting the UTPCPL have explained that "a plaintiff may succeed under the catch-all provision by satisfying the elements of common-law fraud or by otherwise alleging deceptive conduct." *Vassalotti v. Wells Fargo Bank, N.A.*, 732 F. Supp. 2d 503, 510 (E.D. Pa. 2010) (citing *Hunt v. United States Tobacco Co.*, 538 F.3d 217, 219 (3d Cir.2008)). Plaintiffs proceeding under a "deceptive conduct" theory need not satisfy the heightened particularity standard of Federal Rule of Civil Procedure 9(b). *Belmont v. MB Inv. Partners, Inc.*, 708 F.3d 470, 498 n.33 (3d Cir. 2013). But under either theory, a plaintiff must also allege that they justifiably relied on a defendant's deceptive conduct. *Hunt*, 538 F.3d at 219.

15

Plaintiff appears to concede that he has not alleged the elements of common law fraud. ECF No. 13, PageID.312. Instead, Plaintiff argues, he has alleged deceptive conduct. *Id.* at PageID.312-14. Grammer disagrees. It argues that Plaintiff has not alleged that Grammer directed any conduct toward Plaintiff, deceptive or otherwise. Grammer contends that this "lack of interaction" also precludes Plaintiff from establishing justifiable reliance. ECF No. 9, PageID.107.

Plaintiff argues that, following *Zwiercan v. Gen. Motors Corp.*, 2003 WL 1848571, at *2 (Pa. Com. Pl. Mar. 18, 2003), Pennsylvania law imposes a duty on manufacturers to disclose "a known safety defect that is likely to cause significant bodily harm," even in the absence of a fiduciary or confidential relationship between parties. ECF No. 13, PageID.310, 312-13 . Plaintiff has undoubtedly alleged that the AHR defect is likely to cause significant bodily harm. Sudden AHR deployment could certainly cause injury to a passenger's head and neck. In fact, this is exactly what Plaintiff alleges happened to his daughter. ECF No. 1, PageID.7. And Plaintiff also alleges, plausibly, that sudden deployment of the driver's-side AHR could distract or incapacitate the vehicle's driver, causing a collision.

Defendant Grammer responds that *Zwiercan* does not extend to the remote manufacturer of a component part which had no direct dealings with the ultimate purchaser.[2] In the automotive context, the Sixth Circuit and other courts applying Pennsylvania law have held *Zweircan* applicable to "remote manufacturers" with whom ultimate vehicle purchasers had no direct dealings. *Smith v. Gen. Motors LLC*, 988 F.3d 873, 879 (6th Cir. 2021) (acknowledging "that Pennsylvania "recognizes a duty to disclose for remote manufacturers with superior knowledge" so long as that defect is "serious and life threatening."); *Chapman v. Gen. Motors LLC*, 2021 WL 1286612, at *17 (E.D. Mich. Mar. 31, 2021) (rejecting vehicle manufacturer's argument that it no duty to disclose safety defect where vehicle was purchased from a dealer); *Francis v. Gen. Motors, LLC*, 504 F. Supp. 3d 659, 685-6 (E.D. Mich. 2020) (rejecting argument that manufacturer "could not have had any duty to disclose any knowledge of the defect because it did not engage in

---

[2] In a footnote, Defendant also argues that *Zwiercan* is contrary to Pennsylvania law, and should not be followed. ECF No. 16, PageID.351. This argument is unavailing. It may be correct that some parts of *Zwiercan's* holding have been questioned. *See, e.g.*, *Slemmer v. McGlaughlin Spray Foam Insulation, Inc*., 955 F. Supp. 2d 452, 461 (E.D. Pa. 2013) (rejecting *Zwiercan's* holding that plaintiffs were entitled to a presumption of reliance where defendants allegedly failed to disclose a product defect). But the Sixth Circuit has followed *Zwiercan*'s conclusions regarding a manufacturer's duty to disclose. *See, e.g., Smith v. Gen. Motors LLC*, 988 F.3d 873, 879 (6th Cir. 2021) (following *Zwiercan*).

any sales transaction directly with the plaintiffs") (collecting cases). And at least one court has held the same logic applicable to component manufacturers, albeit not for a UTPCPL claim, finding a duty to disclose based upon incomplete representations about product safety. *In re Takata Airbag Prod. Liab. Litig.*, No. 14-24009-CV, 2017 WL 2406711, at *5 (S.D. Fla. June 1, 2017) (plaintiffs alleged that manufacturer of defective airbags had duty to disclose under the fraudulent concealment laws of Pennsylvania and other states where defendant "possessed exclusive knowledge of the dangers and risks posed by the airbags, intentionally concealed those dangers and risks, and made incomplete representations about the safety and reliability of the airbags generally, while purposefully withholding material facts from Plaintiffs that contradicted these representations," but Pennsylvania-law based claims were dismissed on other grounds) (internal marks omitted). But the court need not decide whether a duty to disclose extends to a component manufacturer such as Grammer, because Plaintiff has not sufficiently alleged that Grammer had knowledge of the AHR defect.

For an omission to constitute fraud, there must be "intentional concealment, which implies knowledge." *Wozniak v. Ford Motor Co.*, No. 2:17-CV-12794, 2019 WL 108845, at *3 n.5

(E.D. Mich. Jan. 4, 2019). Grammer cannot be required to disclose something it did not know. And Plaintiff has not sufficiently alleged that Grammer had knowledge of the alleged defect. Plaintiff alleges that:

> Based on engineering design reports, pre-production testing, preproduction design failure mode analyses, manufacturing and design validation reports, plastic aging tests, ABS plastic material data reports, consumer complaints to NHTSA, consumer complaints to dealerships, consumer complaints on website forums, aggregate warranty data compiled from Chrysler dealerships, and repair orders and parts data received from dealerships, amongst other things, Grammer has known since at least 2010 that the AHR was made with an inferior plastic that could not withstand the pressure it was exposed to and would prematurely fail during normal use of the vehicle.

ECF No. 1, PageId.19-20. As this Court and others in this district have held when considering automobile defect state law claims sounding in fraud, allegations that a manufacturer "knew or should have known" about a defect based on "pre-production testing, pre-production design failure mode effects analysis, production design failure mode effects analysis, early consumer complaint[s] made to [the manufacturer's] network of exclusive dealers and NHTSA [National Highway and Traffic Safety Administration]" are "generally insufficient to support an inference that the defendant

knew about a defect at the time it sold the car." *Raymo v. FCA US LLC*, 475 F. Supp. 3d 680, 707 (E.D. Mich. 2020) (collecting cases) (quoting *Beck v. FCA US LLC*, 273 F. Supp. 3d 735, 753 (E.D. Mich. 2017)). Similarly, allegations of "testing conducted by Defendant in response to consumer complaints, and repair order and parts data received by Defendant from Defendant's network of dealers" have been found "too vague" and at "too high a level of generality" to establish that a manufacturer had knowledge of an alleged defect. *Raymo*, 475 F. Supp. 3d at 707 (quoting *Hall v. General Motors, LLC*, No. 19-cv-10186, 2020 WL 1285636, at *3 (E.D. Mich. 2020)).

The Court recognizes that a case could arise where a design was so patently defective or a material choice so obviously inadequate that a manufacturer could be said to have knowledge by virtue of the defect alone. But, on the allegations currently before it, the Court cannot conclude that this is such a case. Beyond allegations that the ABS plastic Grammer used is "lightweight, recyclable" and "relatively cheap," that ABS is "frequently used for inexpensive consumer products," and that ABS "does not withstand fatigue well," ECF No. 1, PageID.18, Plaintiff does not explain how the ABS plastic used was so clearly inadequate that preproduction testing or design analysis would necessarily have revealed the alleged defect—particularly where the alleged defect is one that the

Plaintiff alleges will develop "over time." *Id.* Plaintiff alludes to various studies and tests suggesting that ABS is or was known to be inadequate for uses like the one to which Grammer put it. But without specific citation to such reports, or identification that such reports about the properties of ABS plastic exist—whether in Defendant's possession, in specialized publications, or anywhere in the public domain—the Court cannot accept such generalized allegations under existing precedent. See *Raymo*, 475 F. Supp. 3d at 707-9. Plaintiff does not provide more than the sort of general and vague allegations of knowledge that this Court and others have rejected in the past. Therefore, the Court concludes that Plaintiff has not sufficiently alleged that Grammer had a duty to disclose the alleged defect under the "catch-all" provision of the UTPCPL.

### d. The statute of limitations as to Plaintiff's MMWA & implied warranty claims is not tolled by the fraudulent concealment doctrine

In diversity actions, this Court applies Michigan choice-of-law principles. *Standard Fire Ins. Co. v. Ford Motor Co.*, 723 F.3d 690, 693 (6th Cir. 2013). Michigan's borrowing statute, Mich. Comp. Laws § 600.5861, provides that an action "based upon a cause of action accruing without this state shall not be commenced after the expiration of the statute of limitations of either this state or the place where the cause of action accrued . . . ." Plaintiff is a

21

Pennsylvania citizen, and his claims arise from his purchase of a used vehicle in Pennsylvania. Therefore, if either Michigan or Pennsylvania's statute of limitations bars Plaintiff's claim, the claim fails.

Defendant argues that Plaintiff's claims are barred by Pennsylvania's statute of limitations, which provides that claims for the breach of an implied warranty must be "commenced within four years after the cause of action has accrued." 13 Pa. Stat. and Cons. Stat. § 2725. Because an implied warranty is "one of present condition," the limitations period begins to run when the vehicle is delivered. *Hurley v. BMW of N. Am., LLC*, No. CV 18-5320, 2020 WL 1624861, at *8 (E.D. Pa. Apr. 2, 2020). For used vehicles, Pennsylvania courts consider "the date of original delivery to the first purchaser as the relevant date of delivery." *Id*. Because, Defendant argues, Plaintiff's vehicle was delivered to its original purchaser some time in 2014 at the latest, the four-year statute of limitations for Plaintiff's implied warranty and MMWA claims expired some time in 2018 or earlier. ECF No. 9, PageID.110.

Plaintiff does not dispute that implied warranty claims are subject to a four-year statute of limitations, and that his MMWA

claims are subject to the same limitations period.[3] ECF No. 13, PageID.318. Instead, Plaintiff argues that the statute of limitations has been tolled either by Grammer's allegedly fraudulent concealment of the defect, or by the "discovery rule." ECF No. 1, PageID.35-6; ECF No. 13, PageID.318-20. The Court need not discuss the discovery rule as it relates to Plaintiff's implied warranty claim, however, because under Pennsylvania law, that rule does not apply to actions based on implied warranties. *Vullings v. Bryant Heating & Cooling Sys.*, No. CV 18-3317, 2019 WL 687881, at *3 (E.D. Pa. Feb. 19, 2019) (citing *Nationwide Ins. Co. v. Gen. Motors Corp./Chevrolet Motor Div.*, 533 Pa. 423, 434, 625 A.2d 1172, 1178 (1993)).

The Court now turns to Plaintiff's fraudulent concealment argument. Under Pennsylvania law, the fraudulent concealment

---

[3] Because the Magnuson-Moss Warranty Act "does not contain an express limitations period, federal courts apply the most analogous statute of limitations." *Hurley,* 2020 WL 1624861 at *9 (quoting *Lowe v. Volkswagen of America, Inc.*, 879 F.Supp. 28, 30 (E.D. Pa. 1995)). Federal courts considering MMWA claims based on implied warranties under Pennsylvania law have applied the same four-year statute of limitations. *See Id.*; *Lowe*, 879 F.Supp. at 30. And "because claims for breach of express or implied warranties under the MMWA are derived from underlying state law claims, a court's 'disposition of the state law warranty claims determines the disposition of the Magnuson-Moss Act claims.'" *Hurley*, 2020 WL 1624861 at *8 (quoting *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1022 (9th Cir. 2008)).

doctrine prevents a defendant from invoking the statute of limitations as a bar to suit when "through fraud or concealment the defendant causes the plaintiff to relax his vigilance or deviate from his right of inquiry." *Univ. of Pittsburgh v. Townsend*, 542 F.3d 513, 526 (6th Cir. 2008) (quoting *Schaffer v. Larzelere*, 410 Pa. 402, 405, 189 A.2d 267 (Pa. 1963)). While the doctrine does not require a showing that the fraud or concealment was intentional, a plaintiff invoking the doctrine "bears a heightened burden" to prove fraud or concealment "by evidence, which is clear, precise, and convincing." *Townsend*, 542 F.3d at 526 (quoting *Kingston Coal Co. v. Felton Min. Co.*, 690 A.2d 284, 290 (1997)). "Mere mistake, misunderstanding or lack of knowledge is insufficient . . .." *Kingston Coal Co.*, 690 A.2d at 290. Therefore, to satisfy this burden, a plaintiff must "point to some affirmative independent act of concealment" by the defendant. *Townsend*, 542 F.3d at 526 (quoting *Kingston*, 690 A.2d at 290). Silence may suffice as fraudulent concealment "only when there is a requisite duty to disclose." *Townsend*, 542 F.3d at 526 (quoting *Weik v. Estate of Brown*, 794 A.2d 907, 911 (Pa.Super.Ct.2002)).

Grammer argues that it took no affirmative actions to conceal the alleged defect. ECF No. 9, PageID.112-13. Plaintiff appears to concede this point, and instead raises the same arguments

24

discussed above in Part C—that following *Zwiercan,* 2003 WL 1848571, at *2, Pennsylvania law imposes a duty on manufacturers to disclose "a known safety defect that is likely to cause significant bodily harm," even in the absence of a fiduciary or confidential relationship between parties. ECF No. 13, PageID.310, 319-20. For the reasons discussed above, the Court concludes that Plaintiff has not sufficiently alleged that Grammer had knowledge of the AHR defect, and thus has not sufficiently alleged that Grammer had a duty to disclose. Therefore, Plaintiff has not sufficiently alleged that Pennsylvania's statute of limitations should be tolled under the fraudulent concealment doctrine.

### e. Plaintiff has sufficiently alleged unjust enrichment

Defendant argues that Plaintiff's claim for unjust enrichment must fail because Plaintiff does not allege that he conferred any benefit on Grammer. ECF No. 9 PageID.114. Under Pennsylvania law, the elements of unjust enrichment are: "(1) benefits conferred on defendant by plaintiff; (2) appreciation of such benefits by defendant; (3) acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value." *Mitchell v. Moore*, 729 A.2d 1200, 1203-1204 (Pa.Super.1999). A direct contractual relationship is not required. *D.A. Hill Co. v. Clevetrust Realty Invs.*, 524 Pa. 425,

432, 573 A.2d 1005, 1009 (1990). Nor is it required that the plaintiff "directly confer" a benefit on the defendant. *Baker v. Fam. Credit Counseling Corp.*, 440 F. Supp. 2d 392, 420 (E.D. Pa. 2006). Instead, "the appropriate inquiry is whether the benefit, if any . . . was more than remote or incidental." *Century Indem. Co. v. URS Corp.*, No. CIV.A. 08-5006, 2009 WL 2446990, at *8 (E.D. Pa. Aug. 7, 2009).

Defendant argues that Plaintiff has not identified a benefit that Plaintiff conferred on Grammer. Citing his Complaint, Plaintiff responds that Grammer was unjustly enriched by "selling defective AHRs to Chrysler at a profit and for more than they were worth." ECF No. 1, PageID.50. Plaintiff also alleges that Grammer has "benefitted through its unjust conduct in refusing to participate in a recall of the defective AHR and thereby saving the cost of a recall." *Id.*

Pennsylvania courts allow unjust enrichment claims in the absence of any direct benefit, but only where "the benefit is not too attenuated to support equitable relief." *Aetna Inc. v. Insys Therapeutics, Inc.*, 324 F. Supp. 3d 541, 559 (E.D. Pa. 2018) (denying drug manufacturer's motion to dismiss unjust enrichment claim brought by a health insurer where insurer alleged that it paid for otherwise non-covered prescriptions because manufacturer induced physicians to prescribe drugs for "off-label" uses). In at

26

least one case, a Pennsylvania court concluded that an unjust enrichment claim was available to purchasers of aircraft against the manufacturer of a faulty engine component, explaining that "plaintiffs need not have purchased the product at issue directly from [defendant] to have conferred benefits on the defendant." *Powers v. Lycoming Engines*, No. CIV.A. 06-2993, 2007 WL 2702705, at *3 (E.D. Pa. Sept. 12, 2007) (internal marks omitted).[4]

Other courts have recognized that under Pennsylvania law, "benefit refers to 'any form of advantage,' and the plaintiff need not directly make payment to defendant in order to raise a claim for unjust enrichment." *In re Ford Motor Co. E-350 Van Prod. Liab. Litig. (No. II)*, No. CIV.A. 03-4558 GEB, 2011 WL 601279, at *6 (D.N.J. Feb. 16, 2011). In the automotive products liability context, courts have entertained claims for unjust enrichment against car manufacturers by vehicle purchasers even where the "direct benefits—*i.e.*, payment for vehicle delivery—took place upstream,"

---

[4] At least one court has questioned *Lycoming*. *See In re Static Random Access Memory (SRAM) Antitrust Litig.*, No. 07-MD-01819 CW, 2010 WL 5094289, at *7 (N.D. Cal. Dec. 8, 2010) (declining to follow *Lycoming* because the *Lycoming* court "did not cite any authority in support of its statement that Pennsylvania permits unjust enrichment claims by indirect purchasers"). But the *Lycoming* court issued several closely related opinions, only one of which (cited by the *SRAM* court) did not cite authority for its conclusion that Pennsylvania law permits indirect purchaser claims.

because such purchases may have "factored into the calculus whereby [dealerships and the manufacturer] made orders for replacement vehicles." *E-350 Van Prod. Liab. Litig. (No. II)*, 2011 WL 601279 at *6; *see also In re Gen. Motors LLC Ignition Switch Litig.*, 257 F. Supp. 3d 372, 445 (S.D.N.Y. 2017).

The facts of the case here are analogous to *Lycoming*. The plaintiffs in that case, just as here, were purchasers of an assembled vehicle who alleged that a component part— manufactured by the defendant and integrated into the vehicle— was faulty. On those facts, the *Lycoming* court concluded that plaintiffs had sufficiently alleged that they had conferred a benefit on the defendant engine manufacturer, even though the plaintiffs had merely purchased airplanes from third parties into which the engines had already been integrated. *Lycoming*, 2007 WL 2702705, at *3. Plaintiff in the case currently before this Court presents a near-identical claim. The *Lycoming* court also noted that the plaintiffs in that case had adequately pleaded that the engine manufacturer's enrichment was "unjust" because, although the manufacturer offered steeply discounted replacement kits for the faulty part, plaintiffs still bore "the remaining costs of replacing [the faulty part] as well as the other costs associated with the replacement." *Id*. Here, Plaintiff alleges that Grammer has "refused

28

to warn customers, issue a recall, or take responsibility for repairing or replacing the AHR headrests," nor have they "offered to reimburse" putative class members who "incurred costs relating to the defect." ECF No. 1, PageID.19, 33.

At least one other court has dismissed a similar unjust enrichment claim brought on behalf of a nationwide class of vehicle purchasers against the manufacturer of allegedly defective airbags. *In re Takata Airbag Prod. Liab. Litig.*, No. 14-24009-CV, 2017 WL 2406711, at *9 (S.D. Fla. June 1, 2017). The *Takata* court concluded that, while direct conferral of a benefit is not required to state an unjust enrichment claim, plaintiffs had not sufficiently alleged that they conferred a "direct benefit" on the manufacturer because "[the airbag manufacturer] realized its benefit as soon as it sold its airbag parts to the Automotive Defendants. And the benefit was not contingent on any consumer's decision to purchase a vehicle."[5] *Id.*

---

[5] Notably, the allegations of a benefit in *Takata* are very similar to the allegations in this case. There, plaintiffs alleged that "Takata benefitted through its unjust conduct, by selling Defective Airbags with a concealed safety-and-reliability related defect, at a profit, for more than these Defective Airbags were worth, to Plaintiffs, who overpaid for these Defective Airbags by overpaying for their Class Vehicles, [or] would not have purchased these Defective Airbags and Class Vehicles at all." *Takata*, 2017 WL 2406711,at *10. Here, Plaintiff alleges that "Plaintiff and the Class members overpaid for the Class Vehicles because they would not have purchased the Class Vehicles, or would have paid less, if Grammer had disclosed the defect in the AHR," and that "Grammer benefitted through its

at *10. But that case is distinguishable, because the *Takata* court appears to have applied Florida law to the nationwide class claim, which requires a "direct benefit" for unjust enrichment claims, *Romano v. Motorola, Inc.*, 2007 WL 4199781, at *2 (S.D. Fla. Nov. 26, 2007).[6] Pennsylvania law, as highlighted in *Lycoming*, appears to allow unjust enrichment claims for benefits that are somewhat more attenuated.

Grammer does not address *Lycoming*, or explain why that decision does not control the result at this stage. While Grammer cites *Stutzle v. Rhone-Poulenc S.A.*, 2003 WL 22250424, at *1 (Pa. Com. Pl. Sept. 26, 2003), that case has not been followed in subsequent decisions applying Pennsylvania law. *See, e.g., Sheet Metal Workers Loc. 441 Health & Welfare Plan v. GlaxoSmithKline, PLC*, 737 F. Supp. 2d 380, 444 (E.D. Pa. 2010) (concluding that *Stutzle* does not "stan[d] for a direct benefit requirement"). At this early motion to dismiss stage, the Court is persuaded by *Lycoming* that a claim like the one Plaintiff alleges here is available under Pennsylvania law. Grammer's motion to dismiss Plaintiff's unjust

---

unjust conduct by selling the defective AHR to Chrysler at a profit and for more than the defective AHRs were worth." ECF No. 1, PageID.50.

[6] Although under Florida law a benefit may still be "direct" even if it is conferred "through indirect contact with a defendant through an intermediary." *Takata*, 2017 WL 2406711 at *9.

enrichment claim is therefore denied. If subsequent discovery reveals the connection between Plaintiff's purchase and Grammer to be too attenuated to for an unjust enrichment claim to survive under Pennsylvania law, the issue may be re-examined on a motion for summary judgment.

## IV. Conclusion

For the foregoing reasons, Defendant's Motion to Dismiss is **GRANTED IN PART** and **DENIED IN PART**. If Plaintiff believes he can revive his dismissed claims by filing an Amended Complaint addressing the deficiencies identified in this Order, he may request leave to do so. Any such request should be made within 45 days of the date of this Order.

**SO ORDERED.**

Dated:  September 29, 2021

s/Terrence G. Berg
TERRENCE G. BERG
UNITED STATES DISTRICT JUDGE